FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 29, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JERIMEE M.,[1]

        Plaintiff,

   v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

No.   4:21-cv-5147-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

    Plaintiff Jerimee M. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide meaningfully explained reasoning supported by substantial evidence for discounting an evaluating medical opinion, the ALJ erred. This matter is remanded for further proceedings.

//

/

---

[1] For privacy reasons, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

## I.    Five-Step Disability Determination

2

A five-step evaluation determines whether a claimant is disabled.[2] The

3

claimant has the initial burden of establishing he is entitled to disability benefits

4

at steps one through four.[3] At step five, the burden shifts to the Commissioner to

5

show the claimant is not entitled to benefits.[4]

6

Step one assesses whether the claimant is engaged in substantial gainful

7

activity.[5] If the claimant is engaged in substantial gainful activity, benefits are

8

denied.[6] If not, the disability evaluation proceeds to step two.[7]

9

Step two assesses whether the claimant has a medically severe impairment

10

or combination of impairments that significantly limit the claimant's physical or

11

mental ability to do basic work activities.[8] If the claimant does not, benefits are

12

denied.[9] If the claimant does, the disability evaluation proceeds to step three.[10]

13

14

[2] 20 C.F.R. § 416.920(a).

15

[3] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

16

[4] *Id.*

17

[5] 20 C.F.R. § 416.920(a)(4)(i).

18

[6] *Id.* § 416.920(b).

19

[7] *Id.*

20

[8] *Id.* § 416.920(a)(4)(ii).

21

[9] *Id.* § 416.920(c).

22

[10] *Id.*

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

1

2

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[11] If an impairment or combination of impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant can perform past work, benefits are denied.[14] If not, the disability evaluation proceeds to step five.

Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

If after the initial five-step analysis, the ALJ deems Plaintiff disabled, then the ALJ must determine whether drug addiction or alcoholism (DAA) is a material

---

[11] 20 C.F.R. § 416.920(a)(4)(iii).

[12] *Id.* § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

[15] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

factor contributing to the disability.[17] If the remaining limitations without DAA would not be disabling, disability benefits are not awarded.[18] The claimant has the burden of showing that his DAA is not a material contributing factor to disability.[19]

## II.    Factual and Procedural Summary

On April 16, 2019, Plaintiff filed a Title 16 application alleging disability.[20] After the agency denied his application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[21] ALJ Caroline Siderius held a telephonic hearing in December 2020, during which Plaintiff and a vocational expert testified.[22] Plaintiff testified that because of his anxiety he has a difficult time being around anyone, that he does not trust others, and that he is depressed, in

---

[17] 20 C.F.R. § 416.935(a).

[18] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[19] *Parra*, 481 F.3d at 748.

[20] AR 255–66. In 2014, Plaintiff filed a prior Title 16 disability application. He was not represented during that proceeding. AR 42–44. Disability was denied by ALJ Wayne Araki in 2016. AR 112–31. The Appeal Council found error. A second hearing before ALJ Jesse Shumway in 2018. AR 74–86. Disability was again denied. AR 132–53.

[21] AR 184–206.

[22] AR 87–111.

part because he does not know how to build a productive life for himself. Plaintiff testified that he drinks beer nightly to "wind down" and so that he doesn't have to feel emotions.[23] Plaintiff testified that he has a seasonal part-time landscaping business that allows him flexibility, including canceling or postponing a landscaping job if he is feeling too anxious and stressed, which happens about 4–5 times a month.[24]

The ALJ denied Plaintiff's application.[25] In conducting the sequential disability evaluation, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since April 16, 2019, the application date

- Step two: Plaintiff had the following medically determinable severe impairments: affective disorder, bipolar disorder, depression, anxiety disorder, post-traumatic stress disorder (PTSD), personality disorder, and substance abuse disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

---

[23] AR 92–110.

[24] AR 92–105.

[25] AR 17–36.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  > [He] is able to remember and understand instructions for tasks generally required by occupations with an SVP of 1, 2, or 3. He is able to carry out instructions for tasks generally required by occupations with an SVP of 1, 2, or 3. Assigned tasks should be able to [be] completed without the assistance of others, although occasional assistance would be tolerated. He is limited to occasional superficial interaction with the general public, but he is able to interact occasionally with co-workers or supervisors. He should not be assigned tasks that require goal setting or planning.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as collator operator, salvage/laborer, and production helper.[26]

In reaching her decision, the ALJ found the reviewing opinions of Andrew Forsyth, Ph.D., and Jon Anderson, Ph.D., persuasive and the examining opinion of Ronald Page, Ph.D., unpersuasive.[27] The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and

---

[26] AR 20–32.

[27] AR 158–66, 174–82, 362–68.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence."[28]

Plaintiff sought review of the ALJ's decision by the Appeals Council, which denied review.[29] Plaintiff timely appealed to the Court, challenging the ALJ's failure to properly consider Dr. Page's opinion and Plaintiff's symptom reports.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[30] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[31] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] It is the role of the ALJ—and not the Court—to weigh conflicting evidence, and so the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[33] The Court considers the entire record.[34]

---

[28] AR 26.

[29] AR 1–6.

[30] 42 U.S.C. § 405(g).

[31] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[32] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[33] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[34] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Further, the Court may not reverse an ALJ decision due to a harmless error.[35] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[36]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred when considering Dr. Page's medical opinion. The Court agrees. The ALJ's reasons for finding Dr. Page's opined limitations as unpersuasive are not supported either by substantial evidence or by adequate explanation.

### 1.    Standard

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[37] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[38] Supportability and consistency are the most important factors,[39] and the ALJ must explain how she considered the

---

[35] *Molina*, 674 F.3d at 1111.

[36] *Id.* at 1115 (cleaned up).

[37] 20 C.F.R. § 416.920c(a), (b).

[38] *Id*. § 416.920c(c)(1)–(5).

[39] *Id*. § 416.920c(b)(2).

supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[40]

### 2. Dr. Page

In March 2019, Dr. Page reviewed a social-work report from December 2018, conducted a clinical interview and a mental-status examination, and completed the state's Psychological/Psychiatric Evaluation form.[41] Dr. Page diagnosed Plaintiff with PTSD (childhood onset, severe) and determined his chronic symptoms were panic attacks, agoraphobia, distress, depression, nightmares, self-isolation, insecurity, and poor ego strength.[42] Dr. Page opined that while Plaintiff was not limited or only mildly limited in most basic work activities, he was moderately limited in his ability to ask simple questions or request assistance, and markedly limited in his ability to communicate and perform effectively in a work setting, to maintain appropriate behavior in a work setting, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform activities within a schedule, maintain regular attendance, and be punctual

---

[40] *Id.* § 416.920c(b)(2), (c)(1)–(5); *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022) ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[41] AR 362–68.

[42] AR 363–64.

within customary tolerances without special supervision.[43] Dr. Page found that Plaintiff's impairment was chronic and that it was not the result of alcohol or drug use.[44]

The ALJ found Dr. Page's opinion unpersuasive because 1) it was based on one examination, 2) the examination findings were inconsistent with the opinion, 3) the opinion was inconsistent with the evidence in the record, 4) the evidence showed symptom exacerbations tied to alcohol and cannabis use and medication noncompliance, 5) Plaintiff did not meet the criteria for inpatient admission during the relevant period, and 6) the opinion was inconsistent with Plaintiff's ability to work intermittently throughout the relevant period.[45] The Court addresses each of the ALJ's reasons in turn.

### a.  *Number of examinations*

The ALJ may consider the nature of the relationship the doctor has with the claimant, including the length of the relationship, the frequency of examinations, and the purpose and extent of the treatment relationship.[46] In addition to conducting a clinical interview and a mental status examination, Dr. Page examined a December 2018 social-work report—a report that does not appear to be

---

[43] AR 365.

[44] AR 365.

[45] AR 30.

[46] 20 C.F.R. § 416.920c(c)(3).

part of this record. The ALJ found the two reviewing opinions—by providers who did not examine Plaintiff at all—more persuasive than Dr. Page's evaluating opinion. But as the regulations recognize, a medical source "may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the] folder."[47] The ALJ's decision to discount Dr. Page's opinion because he only examined Plaintiff once is not supported by legitimate substantial evidence.[48]

*b.*  *Examination findings*

The ALJ found Dr. Page's marked limitations were not supported by his examination findings, which "showed abnormal mood" with "all other findings . . . within normal limits."[49] This brief, generalized finding fails to fully consider Dr. Page's examination.

---

[47] *Id.* § 416.920c(c)(3)(v).

[48] *See id.* § 416.920c(3)(v)); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[49] AR 30. *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

1    While Dr. Page found Plaintiff's thought process, orientation, perception,

2    memory, fund of knowledge, concentration, and abstract thought were normal,

3    Dr. Page also found that—in addition to Plaintiff's abnormal mood—his insight and

4    judgment were abnormal. Dr. Page noted that Plaintiff lives with an expectation of

5    doom, loss, inadequacy, shame, and fearfulness, that he was incongruous with his

6    surroundings, and he was unable to trust and achieve intimacy despite his actual

7    adequacy. Dr. Page also noted that Plaintiff's speech was under animated and

8    direct, that Plaintiff was anxious, tense, and presented with constricted animation,

9    a serious to downcast mood, and with a composed but not relaxed affect. In

10    addition, during the clinical interview, Dr. Page elicited that Plaintiff had been

11    unable to sustain any job for longer than six months, Plaintiff had an emotionally

12    turbulent childhood, and that, other than to perform occasional odd jobs, Plaintiff

13    kept to himself. Given Plaintiff's abnormal insight, abnormal judgment, and other

14    abnormal findings, the ALJ's statement that the examination was normal except

15    for abnormal mood is not accurate. Moreover, Dr. Page's opined limitations were

16    based on Plaintiff's abnormal mood and insight/judgment, not any memory, fund of

17    knowledge, or concentration difficulties. Without more analysis as to why

18    Dr. Page's examination was inconsistent with his marked limitations pertaining to

19    Plaintiff's abnormal mood, insight, and judgment, the ALJ's finding in this regard

20    _____

21    persuasive the medical opinions or prior administrative medical finding(s) will

22    be.").

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

is not supported by substantial evidence. The ALJ must discuss how the abnormal findings are inconsistent with Dr. Page's opined limitations.[50]

### c.    _Record evidence_

The ALJ also discounted Dr. Page's opinion because it was inconsistent with the evidence in the record. Whether a medical opinion is consistent with the longitudinal record—including Plaintiff's reported symptoms and the medical findings and observations by other medical sources—is a factor the ALJ must consider.[51] The consistency inquiry is not simply a comparison of the opinions given by medical sources. It is a comparison of the medical opinion in question to "_evidence_ from other medical sources and nonmedical sources."[52]

Here, the ALJ stated that "the evidence showed intermittent exacerbation of his symptoms to include anxious and depressed mood, restless motor activity, pressured speech, and impaired insight/judgment, overall, he presented to

---

[50] _See Reddick v. Chater_, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct."); _Gallant v. Heckler_, 753 F.2d 1450, 1457 (9th Cir. 1984) (The ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

[51] 20 C.F.R. § 416.920c(b)(2), (c)(2).

[52] _Id._ § 416.920c(c)(2) (emphasis added).

appointments with generally normal examination findings."[53] The ALJ's finding that Plaintiff generally presented with normal examination findings fails to appreciate the persistent waxing of Plaintiff's mental-health symptoms.

For example, an appointment on Plaintiff's disability-application date, reflects that Plaintiff "appears much less easily agitated."[54] A month later, in May 2019, Plaintiff reported that he had been in a fight the month prior, and he was observed to be agitated, tired, emotionally impaired, sad, discouraged, and irritable.[55] In June 2019, Plaintiff appeared disheveled, and the therapist noted that Plaintiff goes into "survival instinct" even with no impeding danger.[56] In July 2019, Plaintiff appeared sad/tearful, depressed, anxious mood (moderate), tearful, and he reported isolating and disconnecting with people; on another occasion, he appeared with an unkept appearance, constricted affect, anxious mood (moderate), and impaired sleep. At another appointment that same month, Plaintiff avoided eye contact and appeared disheveled and agitated, with constricted affect, emotional insight, impaired sleep, and anxious mood (moderate).[57] In August 2019, he appeared disheveled, agitated, sad/tearful,

---

[53] AR 30.

[54] AR 409–11.

[55] AR 373–75, 518.

[56] AR 536.

[57] AR 544, 538.

anxious, and moderately sad with impaired sleep and judgment.[58] His therapist noted that Plaintiff had sent her angry text messages because she had been unavailable the moment he texted when she was on a pre-discussed vacation, and so the counselor blocked Plaintiff's text messages and thereafter ended the treatment relationship with Plaintiff.[59] After the treatment relationship ended, Plaintiff continued to send her angry text messages.[60] Soon thereafter, at his intake with a new mental-health provider, it was noted that Plaintiff was dirty and disheveled, with fleeting eye contact, constricted affect, slumped posture, hyperverbal speech, and anxious and withdrawn mood.[61]

This record reflects that, although as the ALJ mentioned Plaintiff was observed with normal mental-health findings during several appointments, Plaintiff was also often observed with significant abnormal mental-health findings. Plaintiff's mood and insight varied, impacting his ability to care for himself and interact with his treating providers. On this record, it was not enough for the ALJ to find that that Plaintiff "presented to appointments with generally normal

---

[58] AR 564–65.

[59] AR 564–66.

[60] AR 567–68; *see also* AR 573–81 (noting that Plaintiff had a withdrawn mood and limited insight, was malodorous, and was wearing soiled clothing).

[61] AR 584.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

examination findings"[62] and to selectively cite to the "normal" findings without considering the complete diagnostic picture.[63]

The Commissioner argues that the ALJ's finding is supported by Plaintiff's self-report to Dr. Page that he kept a regular waking/sleeping schedule. Yet, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[64] Moreover, on this record, without meaningful explanation by the ALJ, Plaintiff's self-report to Dr. Page about his waking/sleeping schedule does not constitute substantial evidence to support the ALJ's decision to find unpersuasive Dr. Page's opinion that Plaintiff would have difficulty sustaining a normal workday and workweek and performing activities within a schedule and maintaining regular attendance.[65] Therefore, substantial evidence does not support the ALJ's finding that Dr. Page's opinion was inconsistent with the evidence in the record.

---

[62] AR 30

[63] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant*, 753 F.2d at 1456 (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[64] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[65] *See* ECF No. 14 at 6.

d.    <u>*Lack of inpatient treatment*</u>

Fourth, the ALJ found Dr. Page's opinion unpersuasive because Plaintiff did not meet the criteria for inpatient admission during the relevant period. A disability claimant, however, need not meet the criteria for inpatient admission to be deemed disabled—this is not the sole question for disability based on a mental-health impairment. Although Plaintiff did not meet the criteria for inpatient mental-health admission, Plaintiff routinely received mental health counseling and had his mental-health medication managed. Notwithstanding the treatment he received, Plaintiff's mental-health symptoms waxed, and he sought crisis care on occasion.[66] Moreover, a treating provider stated in May 2020, that "[t]he degree of incapacity that [Plaintiff] is experiencing as a consequence of his [mental-health] illness is severe. Sequalae of the illness include harmed interpersonal relations."[67] On this record, that Plaintiff did not meet the criteria for inpatient admission does not constitute substantial evidence supporting the ALJ's finding that Dr. Page's opinion was unpersuasive.

---

[66] *See, e.g.*, AR 630, 640–41.

[67] AR 927. *See also* AR 431 (Jan. 2019: moderate degree of incapacity).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### e.    _Intermittent landscaping work_

Fifth, the ALJ found Dr. Page's opinion unpersuasive because it was inconsistent with Plaintiff's ability to work intermittently throughout the relevant period. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity.[68] Here, the ALJ did not meaningfully discuss how Plaintiff's intermittent, independently performed landscaping work on days that Plaintiff deemed himself capable of mentally working was inconsistent with Dr. Page's opined limitation that Plaintiff was significantly limited as to completing a normal workday and workweek without interruptions from psychologically based symptoms and performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision. The Commissioner highlights in its summary-judgment motion that such work indicates that Plaintiff was able to maintain appropriate behavior and communicate with others—contrary to Dr. Page's opined limitation.[69] But the ALJ—not the Commissioner in its summary-judgment motion—must first articulate this inconsistency with sufficient explanation and

---

[68] 20 C.F.R. § 416.920c(c)(2) (comparing the medical opinion with the evidence from nonmedical sources); _see also Rollins v. Massanari_, 261 F.3d 853, 856 (9th Cir. 2001) (finding claimant's raising of two young children and maintaining a household inconsistent with the medical source's opinion).

[69] ECF No. 14 at 8.

citation to supporting evidence. Moreover, the ALJ must consider Plaintiff's interpersonal behavior and communication abilities at his part-time landscaping work along with his documented inappropriate interpersonal behavior and communication difficulties with treatment providers and neighbors.[70] The ALJ's general finding that Dr. Page's opinion was inconsistent with Plaintiff's ability to perform part-time work is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion."[71]

### f.    *Medical noncompliance and drug and alcohol use*

Finally, the ALJ found Dr. Page's opinion unpersuasive because it was inconsistent with the record evidence showing symptom exacerbations were tied to medication noncompliance and alcohol and cannabis use. As to medication noncompliance, an ALJ may consider whether the record reflects that the claimant's symptoms improved with treatment to such extent that the claimant is

---

[70] *See, e.g.*, AR 552 (reporting continued conflict with neighbors); AR 562 (discussing confrontation with neighbor); AR 564 (noting that Plaintiff sent several angry text messages to his counselor, leading counselor to block messages and end the counseling relationship); AR 567 (noting that Plaintiff was still sending angry text messages to former counselor); AR 593 (noting continued problems with neighbors).

[71] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

1    able to sustain work.[72] In doing so, the ALJ is to be mindful that "it is a

2    questionable practice to chastise one with a mental impairment for the exercise of

3    poor judgment in seeking rehabilitation."[73] Here, the ALJ cited to a crisis call in

4    August 2020—during which time Plaintiff was not on medication and he tested

5    positive for cannabis—when Plaintiff exhibited an anxious and irritable mood,

6    restless motor activity, and impaired insight.[74] Yet, the ALJ did not discuss that

7    Plaintiff's symptoms also waxed when he was on his mental-health medication and

8    that Plaintiff would often appear anxious and withdrawn at the beginning of a

9    treatment session but by the end of the session Plaintiff would calm down, make

10   eye contact, and carry-on a conversation.[75] These portions of the record indicate

11

———————————

12   [72] *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (cleaned up); *Morgan v.*

13   *Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering

14   evidence of improvement).

15   [73] *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir.

16   1999).

17   [74] AR 30 (citing AR 702).

18   [75] *See* AR 645 (Nov. 2019: upset mood/affect, very agitated because people were

19   bumping into him and his dog in the waiting room, reported an upset stomach and

20   nausea, not wanting to engage in conversation or do breathing exercises, was not a

21   productive session); (Dec. 2019: walk-in crisis, anxious, rapid speech, restless,

22   hypervigilance, but with stable mood by end of session); (Dec. 2019: noting

23

that Plaintiff's abnormal symptoms may not be solely due to medication noncompliance but instead his mental impairments. The ALJ must consider the whole record in reaching his finding and provide sufficient explanation and citation to allow the Court to meaningfully review the ALJ's finding.

As to alcohol and cannabis use, the ALJ failed to apply the proper legal sequential analysis when considering Plaintiff's drug and alcohol use. As explained above, the ALJ was required to first conduct the five-step sequential disability evaluation without separating out the impact of Plaintiff's alcohol and cannabis use. If *after* the initial five-step analysis, the ALJ deemed Plaintiff disabled, then the ALJ was to determine whether drug or alcohol use was a material factor contributing to the disability.[76] This is clearly a record that requires a drug addiction and alcoholism (DAA) analysis.[77] But instead of first deciding whether Plaintiff was disabled considering his mental disorders and his substance use, the ALJ erroneously discounted Dr. Page's opined limitations due to Plaintiff's alcohol and cannabis use, and thus found that Plaintiff had not established that he was disabled. This sequential error was compounded by the fact that the ALJ did not

---

dysphoric mood/affect, scattered thought process, irritable behavior, only one word answers at the beginning with very little eye contact; by end of session calm, able to make eye contact, and carry on conversation).

[76] 20 C.F.R. § 416.935(a).

[77] *See* Soc. Sec. Rlg. 13-2p.

mention that Dr. Page found that Plaintiff's impairments were not the result of DAA.[78]

### g.    *Conclusion*

The ALJ's errors when analyzing Dr. Page's opinion were consequential. The vocational expert testified that if a person misses one or two days of work a month on a sustained basis, that they are most likely unable to sustain a job.[79] Therefore, if Dr. Page's opinion that Plaintiff would have a very significant limitation with completing a normal workday and workweek without interruptions from psychologically based symptoms and maintaining regular attendance and punctuality within customary tolerances without special supervision is credited, Plaintiff is unable to sustain fulltime work.

## B.    Other Steps: The ALJ must reevaluate.

Because the ALJ erred when weighing Dr. Page's medical opinion, the Court does not analyze Plaintiff's remaining claim that the ALJ erred when weighing Plaintiff's symptom reports. On remand, the ALJ is encouraged to clearly and meaningfully explain how Plaintiff's reported waxing social-anxiety and paranoia symptoms are inconsistent with the medical record and his ability to work landscaping jobs on his own schedule and care for his dog.[80] General findings are

---

[78] AR 365.

[79] AR 71.

[80] *See Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

insufficient.[81] The ALJ must identify what symptoms are being discounted and what evidence undermines these symptoms.[82]

## C.    Remand for further proceedings.

The ALJ's errors require remand.[83] When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[84] Because the record does not clearly establish disability, further proceedings are needed. On remand, the ALJ must reconsider Dr. Page's opinion and Plaintiff's symptom reports, and, if necessary, determine if Plaintiff's cannabis and alcohol use contributes to his disability.

Because the last psychological examination was more than three years ago, the Court directs the ALJ to order a new psychological examination, unless there has been a treating psychological examination in the interim. The consultative examiner must be given sufficient medical records to allow for a longitudinal

---

[81] *See Garrison*, 759 F.3d at 1010.

[82] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[83] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison*, 759 F.3d at 1020.

[84] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

perspective.[85] The ALJ is to then reconsider the medical evidence, Plaintiff's symptom reports, and reevaluate the sequential process, including assessing whether Plaintiff rebutted *Chavez v. Bowen*'s presumption of continuing nondisability.[86]

## V.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process, including, if necessary, a DAA analysis.

---

[85] The examiner must be given sufficient medical records to allow for a longitudinal perspective. The record must clearly identify what medical records the examiner reviewed.

[86] Although the res-judicata doctrine applies to administrative decisions, the doctrine is "applied less rigidly to administrative proceedings than to judicial proceedings," particularly as to subsequent alleged disability-periods. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). To overcome the presumption of continuing nondisability, the claimant must prove changed circumstances and that the new evidence is material: "there is a reasonable possibility that the new evidence would have changed the outcome" of the Commissioner's determination. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (cleaned up).

1

Accordingly, **IT IS HEREBY ORDERED**:

2

    1.     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is

3

         **GRANTED**.

4

    2.     The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is

5

         **DENIED**.

6

    3.     The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

7

         REVERSING and REMANDING the matter to the Commissioner of

8

         Social Security for further proceedings pursuant to sentence four of 42

9

         U.S.C. § 405(g).

10

    4.     The case shall be **CLOSED**.

11

IT IS SO ORDERED. The Clerk's Office is directed to file this order and

12

provide copies to all counsel.

13

DATED this 29th day of December 2022.

14

*Edward F. Shea*

15

EDWARD F. SHEA
Senior United States District Judge

16

17

18

19

20

21

22

23